Dear Mr. Wiggins:
This opinion is in response to your request for an opinion on the following questions:
 1. In a county of the third class with a pathologist serving as coroner, does Section 58.580, RSMo 1978 [sic], prohibit the payment by the county to said pathologist of just and reasonable compensation for his services rendered as a pathologist in a post mortem medical examination?
 2. Does the term "post mortem examination" as used in Chapter 58, RSMo 1978, as amended, with respect to coroners in counties of the third class, apply only to those actions that may be performed by anyone serving as coroner or does the term include those actions which may only be conducted by a duly licensed individual, such as a pathologist, if the coroner is a pathologist?
 3. Are the results of a post mortem medical examination, whether in written or oral form, conducted by a hospital pathologist for the coroner of a county of the third class and delivered to said coroner, public records within the meaning of Chapter 610, RSMo 1978, as amended?
 4. Can a county of the third class require the person requesting a copy of the post mortem medical examination conducted by a pathologist for the coroner, said post mortem medical examination being paid for by the county, to pay the cost of said post mortem medical examination prior to receiving a copy of the report?
 5. As to questions 3 and 4, is the same result reached if the coroner and pathologist are the same person?
 I. 1. In a county of the third class with a pathologist serving as coroner, does Section 58.580, RSMo 1978 [sic], prohibit the payment by the county to said pathologist of just and reasonable compensation for his services rendered as a pathologist in a post mortem medical examination?
Section 58.530, RSMo 1978,[1] states:
 Whenever the coroner, being himself a physician or surgeon, shall conduct a post-mortem examination of the dead body of a person who came to his death by violence or casualty, and it shall appear to the county court that such examination was necessary to ascertain the cause of such person's death, the county court may allow the coroner therefor an additional fee, not exceeding twenty-five dollars, to be paid as his other fees in views and inquests; but section 58.560 shall not be construed to apply to any such examination when made by the coroner himself.
[Emphasis added.]
Section 58.560 states:
 When a physician, surgeon or pathologist shall be called on by the coroner, or any magistrate of the county acting as the coroner, to conduct a postmortem examination, the county court of said county shall be authorized to allow such physician, surgeon, or pathologist to be paid out of the county treasury, such fees or compensation as shall be deemed by said court to be just and reasonable.
We view your first question to be whether a third class county coroner who is also a pathologist is entitled to the surgeon's fee authorized by Section 58.560. We conclude that third class county coroners who are also pathologists may not collect fees under Section 58.560.
In Opinion No. 101, Bruce, 1967, copy enclosed, this office concluded that fourth class county coroners are not entitled to the twenty-five dollar ($25.00) fee provided for in Section58.530, RSMo 1959 (now, RSMo 1978). Relying on Opinion No. 89, Thurman, 1953, copy enclosed, the 1967 opinion concludes that the purpose behind the enactment of Section 2 of H.B. 880, 1945 Mo. Laws 992, and Section 2 of H.B. 881, 1945 Mo. Laws 1551, (both of which are presently codified at Section 58.100), was to put coroners on a salary-based compensation. See, e.g., Sections 58.110, RSMo 1978, and 58.135, RSMo Supp. 1983. This reasoning has been used in other opinions of this office. See, e.g.,
Opinion, Mayse, March 17, 1950. Because the compensation of coroners is to be entirely salary-based, a coroner-pathologist may not collect fees under Section 58.560.
 II. 2. Does the term "post mortem" examination as used in Chapter 58, RSMo 1978, as amended, with respect to coroners in counties of the third class, apply only to those actions that may be performed by anyone serving as coroner or does the term include those actions which may only be conducted by a duly licensed individual, such as a pathologist, if the coroner is a pathologist?
The phrase "post mortem examination" appears in Chapter 58 in Sections 58.530 and 58.560. These sections concern only the payment of fees to physicians, surgeons, or pathologists who themselves (as the coroner) or at the request of the county coroner, perform a post-mortem examination. Thus, in our opinion, the fees payable for the performance of a post-mortem examination are payable only to physicians, surgeons, or pathologists. We note, for your information, that in Opinion Letter No. 591, Brandom, 1970, copy enclosed, this office concluded that a coroner-physician is not required to conduct the post-mortem examination himself and may call upon a pathologist, surgeon, or physician to conduct the examination.
 III. 3. Are the results of a post mortem medical examination, whether in written or oral form, conducted by a hospital pathologist for the coroner of a county of the third class and delivered to said coroner, public records within the meaning of Chapter 610, RSMo 1978, as amended?[2]
Section 610.015 states in part: "Except as provided in section 610.025, and except as otherwise provided by law, . . . public records shall be open to the public for inspection and duplication." Section 610.010(4), RSMo Supp. 1983, defines the words "public record" in relevant part as: "[A]ny [1] record [2] retained by or of [3] any public governmental body, . . . ;".
The first part of this definition is that the item to be examined must be a record. Although the Sunshine Law does not contain any definition of the word "record", the State and Local Records Law contains the following definition of the word "record" at Section 109.210(5):
 [D]ocument, book, paper, photograph, map, sound recording or other material, regardless of physical form or characteristics, made or received pursuant to law or in connection with the transaction of official business. . . . [Emphasis added.]
Construing the definition of the word "record" in the State and Local Records Law in pari materia with the word "record" in the Sunshine Law, we find that oral presentations of the results of post-mortem medical examinations are covered by Section 610.015
and are not records. Sound recordings of oral presentations are records, in our opinion, as are the written results of such examinations.
The second part of the Section 610.010(4) definition is that the records must be retained by or of a public governmental body. Because the records in question were delivered to the coroner, these records are either retained by the coroner or are the property of the county. See Section 109.270.
The third part of the definition is that the records must be retained by or of a public governmental body. Section 610.010(2), RSMo Supp. 1983, defines the words "public governmental body" in relevant part as:
 [A]ny legislative or administrative governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, or by executive order, including any body, agency, board, bureau, council, commission, committee, department, or division of the state, of any political subdivision of the state, of any county or of any municipal governmental, school district or special purpose district, any other legislative or administrative governmental deliberative body under the direction of three or more elected or appointed members having rule-making or quasi-judicial power, . . .;".
In Opinion Letter No. 48, Cox, 1979, copy enclosed, this office concluded that the coroner's jury constituted a "public governmental body" for purposes of Section 610.010, RSMo 1978. (now, RSMo Supp. 1983).
This means that coroners' records are "public records" for purposes of the Sunshine Law, and that a public right of access exists with regard to them, "[e]xcept as provided in Section610.025, and except a otherwise provided by law, . . .". Section610.015. Our 1979 opinion letter concluded that the exceptions specified in Section 610.025, RSMo 1978 (now, RSMo Supp. 1983), including the "litigation exemption", are not applicable to coroners' records. We also found that the only confidentiality law which "otherwise provided by law" was Section 58.449, RSMo 1978 (now, RSMo Supp. 1983), which makes certain blood alcohol and drug content reports confidential.
Since the time of our 1979 opinion letter, however, the courts have begun to expand the "otherwise provided by law" category of records by implying exceptions to the Sunshine Law. InHyde v. City of Columbia, 637 S.W.2d 251 (Mo.App. 1982), cert.denied, ___ U.S. ___, 103 S.Ct. 1233 (1983), the court concluded that the part of police records containing the name and address of a victim were closed records. One of the rationales behind implying the closure of victim-name-and-address information was that disclosure of such information would infringe the victim's "right of privacy". The court implied that the victim in Hyde might have maintained an action for invasion of privacy, and because this tort action existed for disclosure of the victim-name-and-address information, this information was closed as "otherwise provided by law."
It is the rule in Missouri that a widow or other close family member has a quasi property right in the remains of his or her husband or relative, entitling him or her to the possession and control of the decedent's remains for the purpose of preparing and interring the body properly. Patrick v. Employers Mut. LiabilityIns. Co., 137 Mo. App. 332, 118 S.W.2d 116 (1938). Although no Missouri case holds that the right of control over the body includes the right to control information regarding the body, we can imagine factual situations where the disclosure of embarrassing facts regarding the condition of a dead body could possibly give rise to a tort claim by the widow or other close family member of the decedent.
Accordingly, we conclude that coroner's records are subject to public inspection and duplication, except such records as are confidential under Section 58.449, RSMo Supp. 1983, and that part of such records containing facts regarding the condition of the decedent's body, the disclosure of which would cause severe mental anguish to the decedent's immediate family or constitute an invasion of the right of privacy of the decedent's family.
 IV. 4. Can a county of the third class require the person requesting a copy of the post mortem medical examination conducted by a pathologist for the coroner, said post mortem medical examination being paid for by the county, to pay the cost of said post mortem medical examination prior to receiving a copy of the report?
We assume that your question deals only with post-mortem examinations conducted upon a reasonable belief that a person met his death by violence or casualty. Generally, the county is liable for the costs of the coroner's inquest. See Section58.570; Houts v. Prussing's Admlr, 102 Mo. 13, 14 S.W. 766 (1890).But see Sections 58.580 and 58.590. As we understand your question, you seek to allow the county to charge any person who wishes a copy of an autopsy report, the full cost of the post-mortem examination. We find no provision of law allowing the county to be reimbursed by persons requesting copies of an autopsy report for costs it has incurred in performing the post-mortem examination. Therefore, we answer your question in the negative.
 V. 5. As to questions 3 and 4, is the same result reached if the coroner and pathologist are the same person?
The result reached in resolving questions 3 and 4 is the same if the coroner and pathologist are the same person.
CONCLUSION
It is the opinion of this office that:
(1) A third class county coroner who is also a pathologist is not entitled to the fee provided for in Section 58.560, RSMo 1978.
(2) The post-mortem medical examination referred to in Sections 58.530 and 58.560, RSMo 1978, is that which is performed by a physician, surgeon, or pathologist.
(3) Coroners' records are subject to public inspection and duplication under the Sunshine Law, except such records as are confidential under Section 58.449, RSMo Supp. 1983, and that part of such records containing embarrassing facts regarding the condition of the decedent's body, the disclosure of which would cause severe mental anguish to the decedent's immediate family.
(4) A person requesting a copy of a post-mortem medical examination report is not required to reimburse the county for the cost of the post-mortem medical examination.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosures: Opinion No. 101, Bruce, 1967 Opinion No. 89, Thurman, 1953 Opinion Letter No. 591, Brandom, 1970 Opinion Letter No. 48, Cox, 1979
[1] All statutory references are to RSMo 1978, unless otherwise indicated.
[2] In addition to the Sunshine Law, Chapter 610, RSMo 1978 and Supp. 1983, public access to public records is recognized by Sections 109.180 and 109.190, RSMo 1978, and Missouri common law,e.g., Disabled Police Veterans Club v. Long, 279 S.W.2d 220
(Mo.App. 1955). We will not analyze these rights of access, because the question asked deals only with the Sunshine Law.